**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

NATIONAL YOUTH PLACEMENT CORP.,
INC. and EDUCATION SYSTEM
MANAGEMENT INC.,

    Plaintiffs,

              v.

MANUFACTURERS ALLIANCE
INSURANCE COMPANY,

    Defendant.

Civil Action No.
1:25-cv-03673-SDG

## OPINION AND ORDER

This case is before the Court on the motion to remand filed by Plaintiffs National Youth Placement Corp., Inc and Education System Management Inc. [ECF 13]. Because Defendant Manufacturers Alliance Insurance Company (MAIC) removed this case more than 30 days after service of Plaintiffs' first amended complaint seeking monetary damages, Plaintiffs' motion is **GRANTED**.

## I.    BACKGROUND

This is a dispute about insurance coverage. Plaintiffs are licensed by the State of Georgia's Department of Community Health to operate inpatient substance abuse and mental health treatment facilities for children and adolescents.[1] In June 2023, Plaintiffs obtained a commercial insurance policy from

---

[1]    ECF 2, ¶ 6.

1

MAIC to cover five of their properties, including one in Riverdale, Georgia.[2] In December 2023, the Riverdale property suffered water damage, and in March 2024, the property was vandalized.[3] Plaintiffs made insurance claims for the two losses.[4] MAIC then issued Plaintiffs a notice that their policy would not be renewed, effective June 1, 2024.[5] After some discussion about extending the policy, MAIC issued a new notice of non-renewal stating that Plaintiffs' policy would not be renewed effective July 10, 2024.[6] Plaintiffs agreed to extend the policy through July 1.[7] However, Plaintiffs also maintained that MAIC had not properly given notice of the non-renewal.[8]

Plaintiffs initially filed their complaint against MAIC in the Superior Court of Clayton County, Georgia, in July 2024, seeking a temporary restraining order or preliminary injunction requiring MAIC to maintain the policy in effect pending the court's determination as to whether MAIC properly non-renewed the policy.[9]

---

[2]    *Id.* ¶ 5.

[3]    *Id.* ¶¶ 18, 19.

[4]    *Id.* ¶ 21.

[5]    *Id.* ¶¶ 21, 22.

[6]    *Id.* ¶¶ 23, 24.

[7]    *Id.* ¶ 27.

[8]    *Id.* ¶¶ 28, 29.

[9]    *See generally* Compl., ECF 1-7.

The parties appear to agree that the initial complaint did not seek monetary damages.[10]

In the meantime, MAIC evaluated Plaintiffs' insurance claims, and both sides retained third-party adjusters. Because the parties' correspondence regarding the amounts MAIC purportedly owed Plaintiffs under the policy is important to the resolution of the instant motion, the Court will provide a detailed timeline.

On June 27, 2024, MAIC's counsel denied Plaintiffs' claim for $1.3 million in "extra expenses," alleging in part that Plaintiffs had failed to cooperate in the investigation of their claims.[11] On August 26, Plaintiffs' adjuster demanded overdue payments from MAIC totaling $1,068,454.26, pursuant to Georgia's bad faith refusal to pay statute, O.C.G.A. § 33-4-6.[12] On November 19, Plaintiffs' counsel demanded more than $900,000 from MAIC in lost business income and extra expenses, based on a report prepared by consultants retained by Plaintiffs.[13]

---

[10]  *Compare* ECF 13, at 6, *with* ECF 16, at 2–3.

[11]  ECF 13-3. "Extra Expense" is defined in the policy as "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." ECF 13-1, at 157. The policy's extra expense coverage applies only to Plaintiffs' premises that are also covered by the policy's business income coverage. *Id.*

[12]  ECF 13-4.

[13]  ECF 13-5.

On November 26, MAIC's counsel denied those requests and requested additional documentation.[14] On January 3, 2025, Plaintiffs' counsel submitted the requested documentation and demanded immediate payment of $792,881.66 towards more than $1 million in total lost business income.[15] MAIC has not made the requested payments.[16]

So far unsuccessful, Plaintiffs amended their complaint on April 11, 2025 to include a claim for damages to their property and lost business income.[17] Between April and June 2025, MAIC pursued discovery from Plaintiffs, including in regards to their damages claim.[18] On June 23, Plaintiffs' counsel confirmed during a phone call that they were seeking more than $75,000 in damages.[19] MAIC removed the case on July 1 based on this Court's diversity jurisdiction.[20] Plaintiffs move to remand on the ground that MAIC's removal was untimely.[21]

---

[14]   ECF 13-6.

[15]   ECF 13-7.

[16]   ECF 2, ¶ 34.

[17]   *See generally id.*

[18]   *See, e.g.*, ECFs 1-4, 1-6, 16-2, 16-3.

[19]   ECF 1-6.

[20]   ECF 1, ¶ 25.

[21]   ECF 13.

## II.    APPLICABLE LEGAL STANDARD

A civil action originally filed in state court can be removed to the federal district court embracing the state court if the district court has original jurisdiction over the case. 28 U.S.C. § 1441(a). "[W]hen an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). The removing party "bears the burden of proving that federal jurisdiction exists." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). The "removal statutes are construed narrowly . . . [and] uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

Federal courts possess limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As relevant here, district courts have diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332. When removing an action to federal court, the defendant bears the burden of demonstrating compliance with the procedural requirements for removal. *See Premier Holidays Int'l, Inc. v. Actrade Cap., Inc.*, 105 F. Supp. 2d 1336, 1338–39 (N.D. Ga. 2000).

### III.   DISCUSSION

The Court's jurisdiction over this case is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiffs are Georgia corporations with their principal places of business in Georgia, and thus they are citizens of Georgia.[22] *Id.* § 1332(c)(1). MAIC is a Pennsylvania corporation with its principal place of business in Pennsylvania and therefore a citizen of Pennsylvania.[23] *Id.* Neither party disputes that the amount in controversy exceeds the jurisdictional minimum of $75,000.[24] However, the parties disagree as to whether the case was timely removed pursuant to 28 U.S.C. § 1446.

The removal statute provides that a defendant may remove a case to federal court within 30 days of receiving a plaintiff's initial pleading. 28 U.S.C. § 1446(b)(1). The statute also includes an exception to the 30-day window where "the case stated by the initial pleading is not removable." *Id.* § 1446(b)(3). In such a case, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.*

---

[22]   ECF 2, ¶¶ 1, 2.

[23]   ECF 1, ¶ 24.

[24]   *Compare* ECF 13, at 7, *with* ECF 16, at 5.

6

In *Lowery v. Alabama Power Co.*, the Eleventh Circuit distilled § 1446(b)(3) into three elements: "there must be (1) an amended pleading, motion, order or other paper, which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can first ascertain that federal jurisdiction exists." 483 F.3d 1184, 1215 n.63 (11th Cir. 2007) (cleaned up). As to the first element, the court noted that "other paper[s]" have been held to include responses to requests for admissions, settlement offers, interrogatory responses, deposition testimony, demand letters, and emails estimating damages. *Id.* at 1213 n.62 (collecting cases).[25] As to the third element, the court elaborated that "the documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction." *Id.* at 1215 n.63 (citations omitted).

Here, MAIC's receipt of various demands from Plaintiffs and their representatives seeking nearly $1 million in unpaid insurance benefits—all issued after Plaintiffs filed their initial complaint in July 2024—clearly established that Plaintiffs were seeking more than $75,000 for their policy claims. However, it was not until Plaintiffs amended their complaint to seek monetary damages that these

---

[25]   To qualify as an "other paper" under § 1446(b), the Fifth Circuit has also held that "the defendant must receive the 'other paper' only after it receives the initial pleading." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir. 1992).

demands became part of the amount in controversy, and thus it could "first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Because MAIC did not file its notice of removal within 30 days of receipt of Plaintiffs' amended complaint in April 2025, its removal was untimely.

To avoid remand, MAIC argues that: (1) Plaintiffs' demands in June and August 2024 did not relate to the claims at issue in this litigation; (2) Plaintiffs' demands in November 2024 and January 2025 were settlement demands unsupported by evidence, and therefore not relevant to the amount in controversy analysis; and (3) Plaintiffs' failure to cooperate in discovery should excuse MAIC's untimely removal. Because the Court concludes that the November 2024 and January 2025 demands clearly established the necessary amount in controversy, it need not address the June and August 2024 demands. And while Plaintiffs may not have satisfied their discovery obligations, that possible failure does not extend the time for removal beyond the 30 days provided by § 1446(b)(3).[26]

### A. Plaintiffs' November 2024 and January 2025 demands clearly established the necessary amount in controversy.

MAIC argues that Plaintiffs' demands did not establish by a preponderance of the evidence that the amount in controversy requirement is satisfied, and therefore the demands did not trigger the 30-day window of § 1446(b)(3). As MAIC

---

[26] While the analysis could be different under the one-year deadline to remove a diversity action in 28 U.S.C. § 1446(c)(1), that provision is not at issue here.

points out, courts in this circuit have reasoned that "settlement offers commonly reflect puffing and posturing which are entitled to little weight, but settlement offers providing specific information supporting claim for damages more suggestive of reasonable assessment of claim value and entitled to more weight." *Lainhart v. Nutt*, No. CV 625-046, 2025 WL 1823971, at *3 (S.D. Ga. July 2, 2025), *report and recommendation adopted*, 2025 WL 2085524 (S.D. Ga. July 24, 2025) (cleaned up); *see also Alexander v. Wright Transportation, Inc.*, No. 5:25-CV-13 (MTT), 2025 WL 985716, at *3 (M.D. Ga. Apr. 2, 2025) (similar). But that is what the Fifth Circuit calls an "amount dispute," where the amount in controversy has not been clearly established at the time of removal, and so "the defendant ha[s] to prove by a preponderance of the evidence that the amount-in-controversy requirement was satisfied." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 398 (5th Cir. 2013); *see also Lowery*, 483 F.3d at 1208 ("[I]n the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence."). "Distinguishing between the two removal disputes," *i.e.*, timeliness disputes and amount disputes, "is critical because different standards apply to each." *Mumfrey*, 719 F.3d at 398.

Instead, *Lowery* requires that "the documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction." 483 F.3d at 1215 n.63. Regardless of whether MAIC has carried its

9

evidentiary burden to show that the amount in controversy requirement is satisfied, MAIC must make a different showing here: that "the case stated by the initial pleading [was] not removable," and that its notice of removal was "filed within 30 days after receipt by [MAIC], through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

There is no dispute that Plaintiffs' initial complaint did not allege a claim for monetary damages,[27] nor is it disputed that Plaintiffs' amended complaint presently seeks damages in excess of $75,000. The only question is whether Plaintiffs' November 2024 and January 2025 demands to MAIC for approximately $1 million in unpaid insurance claims, in combination with Plaintiffs' amended complaint seeking monetary damages for MAIC's failure to pay those claims, "contain[ed] an unambiguous statement that clearly establishes federal jurisdiction." *Lowery*, 483 F.3d at 1215 n.63. The Court concludes that the jurisdictional amount in controversy was clearly established upon service of the

---

[27] Nor has any party argued that the value of the relief sought in Plaintiffs' initial complaint exceeded $75,000. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) ("[T]he value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.") (citation omitted).

10

amended complaint, and therefore MAIC's removal, coming more than 30 days after service, was untimely.[28]

### B. Plaintiffs' lack of cooperation in discovery does not extend the time for removal beyond the 30 days provided by § 1446(b)(3).

MAIC also argues that its untimely removal should be excused because Plaintiffs "hid" the amount in controversy. However, MAIC does not provide any direct authority for this proposition. In *Hajdasz v. Magic Burgers, LLC*, 805 F. App'x 884 (11th Cir. 2020), cited by MAIC, the Eleventh Circuit affirmed the district

---

[28] Alternatively, the Court notes that neither a phone call between counsel nor an email *from* MAIC's counsel *to* Plaintiffs' counsel commemorating the call is a "copy of an amended pleading, motion, order or other paper" that was "*recei[ved] by the defendant* . . . from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). *See* ECF 1-6 (email from MAIC's counsel to Plaintiffs' counsel documenting that "you stated that the matter in controversy does exceed $75,000"); *see also, e.g.*, *Smith v. Bally's Holiday*, 843 F. Supp. 1451, 1454 (N.D. Ga. 1994) (noting that "[t]he court is aware of, and defendants have cited, no binding precedent that allows an oral communication to satisfy the statute," and holding that a non-recorded phone call between counsel did not trigger the 30-day removal window of § 1446(b)(3)); *Lowery*, 483 F.3d at 1215 n.63 (holding that the defendant must have received the amended pleading, motion, or other paper "from the plaintiff" to trigger § 1446(b)(3)).

Similarly, Plaintiffs' counsel's verbal agreement that the amount in controversy requirement is met provides no greater evidence of that fact than Plaintiffs' written demands. Applying MAIC's own standard, it is unclear how counsel's statement that Plaintiffs are seeking more than $75,000 in monetary damages could alter the preponderance of the evidence—and, in MAIC's telling, the ascertainability of removal—to a greater degree than a written demand stating as much. *See also Morrison*, 228 F.3d at 1261 ("Subject matter jurisdiction . . . cannot be created by the consent of the parties.").

court's imposition of Rule 11 sanctions, where the defendant attempted to remove the case based on diversity jurisdiction more than one year after commencement, following the plaintiff's motion at trial for a partial directed verdict of more than $75,000. Both the district court and the Eleventh Circuit agreed that the defendant's reliance on the bad-faith exception to 28 U.S.C. § 1446(c)(1)'s one-year deadline for the removal of diversity cases was "insupportable." *Id.* at 889. The district court found no bad faith in plaintiff's discovery objections or failure to disclose the amount in controversy, and that the defendant exhibited a lack of diligence in seeking to discover the information during the one-year period provided in § 1446(c)(1). *Id.*

Most significantly, *Hajdasz* does not speak to the consequences for a plaintiff who does not cooperate in discovery as to the amount in controversy, in relation to the 30-day removal window provided by § 1446(b)(3). Moreover, assuming without deciding that Plaintiffs did not do their part to respond to MAIC's discovery, this does not alter the fact that Plaintiffs made multiple demands to MAIC for approximately $1 million in unpaid insurance benefits and then amended their complaint to include claims to recover those amounts—all more than 30 days before MAIC removed this case.

The Eleventh Circuit's admonition in *Lowery* that "a removing defendant's counsel is bound by Rule 11 to file a notice of removal only when counsel can do

12

so in good faith" does not alter the plain language of § 1446(b)(3), as MAIC would have it. 483 F.3d at 1215 n.63. *Lowery* acknowledges that Rule 11 requires only that the factual allegations supporting federal court jurisdiction "have, or are likely to have following discovery, evidentiary support." *Id.* at 1216 (cleaned up). Plaintiffs' demands would have provided at least some evidence that the amount in controversy requirement was satisfied. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994) ("While [a] settlement offer, by itself, may not be determinative, it counts for something.").

Accordingly, MAIC's removal was untimely under § 1446(b)(3), and this case must be remanded.

## IV.  CONCLUSION

Plaintiffs' motion to remand [ECF 13] is **GRANTED**. The Clerk of Court is **DIRECTED** to **REMAND** this case to the Superior Court of Clayton County, Georgia, and to close this action.

**SO ORDERED** this 31st day of March, 2026.

Steven D. Grimberg
United States District Judge